UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BILLY B.,[1]

                        Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

DECISION & ORDER

20-CV-0036MWP

**PRELIMINARY STATEMENT**

Plaintiff Billy B. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 10). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

>   (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
>   (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.  **The ALJ's Decision**

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 12, 2016, the application date. (Tr. 17-18).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: cervical, thoracic, and lumbar spine disorders with radiculopathy and fusion; diabetes mellitus with neuropathy; hypertension; asthma; obesity; bipolar disorder; anxiety disorder; and anti-social personality disorder. (Tr. 18). The ALJ also found that plaintiff suffered from gastroesophageal reflux disease ("GERD") and a trigger finger, but that those impairments were nonsevere. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or combination of

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 18-21).

The ALJ concluded that plaintiff retained the RFC to perform a full range of light work with certain limitations. (Tr. 21). Specifically, plaintiff was precluded from all ladder, rope, or scaffold climbing, limited to occasional postural motions otherwise, limited to frequent, but not constant, upper extremity handling, fingering, and feeling tasks, and precluded from exposure to dangerous work hazards (such as unprotected heights and exposed moving machinery), exposure to extreme heat, humidity, and cold conditions, and exposure to concentrated pulmonary irritants exposure. (*Id.*). The ALJ further limited plaintiff to "routine, simple tasks not involving a fast assembly quota pace, involving only occasional required work interactions with coworkers and supervisors, and not requiring any public contact work or crowded work settings exposure." (*Id.*). Finally, the ALJ determined that plaintiff would be off-task for up to three percent of the workday due to symptom exacerbations and that he needed the opportunity to change positions as often as every thirty minutes for one to two minutes. (*Id.*). At step four, the ALJ found that plaintiff was unable to perform his past work. (Tr. 27). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as mail clerk and plastic hospital products assembler. (Tr. 28). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 29).

**III.** <u>Analysis</u>

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9, 11). His

principal argument is that the medical opinion afforded the most weight by the ALJ – the October 28, 2016 opinion of consultative examiner John Schwab, DO – was rendered stale by events and medical developments post-dating Dr. Schwab's examination of plaintiff. (Docket ## 9-1 at 11-14; 11 at 1-3). Without a non-stale medical opinion, plaintiff continues, the ALJ erroneously reached a physical RFC determination based upon her lay interpretation of the medical evidence. (Docket # 9-1 at 14-16). I disagree with these contentions.[3]

  An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

  On October 28, 2016, plaintiff presented to Dr. Schwab for a consultative internal medicine examination; at the time, his chief complaints were asthma, GERD, type 2 diabetes with neuropathy in his feet, and neck and back pain secondary to a motor vehicle accident that

---

[3] Plaintiff's contentions relate only to the physical portion of the ALJ's RFC determination, even though the RFC also contains limitations related to plaintiff's mental impairments. Thus, I address the RFC only as it relates to plaintiff's physical limitations. *See, e.g.*, *Cottrell v. Comm'r of Soc. Sec.*, 2019 WL 201508, *2 n.3 (W.D.N.Y. 2019) ("[claimant's] RFC determination also included several mental limitations; however, the [c]ourt focuses its opinion on [claimant's] physical limitations because she argues only that the ALJ's physical RFC findings lack substantial evidence").

had occurred in August 2016. (Tr. 500).[4] Plaintiff described his back pain as a "constant" and "stabbing pain" with an intensity of 6/10, which radiated down both of his legs, worsened with lifting, and got better when he laid down. (*Id.*). Plaintiff indicated that his neck pain was a 7/10 and caused numbness in his hands. (*Id.*). With respect to activities of daily living, plaintiff reported that he cooked seven times per week, cleaned three times per week, did laundry twice per week, shopped four times per week, performed childcare once per week, showered eight times per week, and dressed seven times per week. (Tr. 501). He also enjoyed watching television, listening to the radio, and riding in his truck. (*Id.*).

        On physical examination, plaintiff appeared in no acute distress, had normal gait and stance, could walk on his heels but not on his toes, could squat 25% of full, used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). Dr. Schwab noted that plaintiff's neck was "[s]upple[] [with] no masses," his cervical spine showed full flexion, extension, and lateral flexion bilaterally, as well as full rotary movement bilaterally, and he exhibited no scoliosis, kyphosis, or abnormalities in his thoracic spine. (Tr. 502). Plaintiff did, however, have limited range of motion in his lumbar spine: specifically, he showed flexion sixty degrees, extension ten degrees, lateral flexion twenty degrees bilaterally, and rotary movement twenty degrees bilaterally, and straight leg raises were positive on the right side at forty degrees, but normal on the left side. (*Id.*). Plaintiff also had full range of motion in his shoulders, elbows, forearms, and wrists bilaterally, and hips, knees, and ankles bilaterally, and his joints were stable and nontender. (*Id.*). Moreover, while plaintiff exhibited numbness in the ring, index, and

---

    [4] Dr. Schwab noted that the motor vehicle accident precipitating plaintiff's back pain occurred in April 2016. (Tr. 500). Review of the record, however, reflects that plaintiff's 2016 motor vehicle accident occurred on August 2 of that year. (*See*, *e.g.*, Tr. 340).

middle fingers on his left hand, he had no sensory deficits, full strength in his upper and lower extremities, intact hand and finger dexterity, and full grip strength. (Tr. 502-503). After reviewing a lumbar spine x-ray that showed "[s]traightening," Dr. Schwab diagnosed plaintiff with low back pain, hypertension, asthma secondary to GERD, and diabetes mellitus, type 2, uncontrolled with neuropathy in the feet, and opined that plaintiff's prognosis was stable. (Tr. 503-504). He further opined that plaintiff had "marked limitation[s] to bending, lifting, and carrying heavy objects." (Tr. 503).

       The ALJ assigned "great weight" to Dr. Schwab's opinion. (Tr. 26). She reasoned that Dr. Schwab's opinion was "internally consistent with the examination finding [plaintiff] to have normal gait, full range of neck motion, decreased range of lumbar spine motion, full extremity range of motion, and intact extremity dexterity, manipulation, sensation, and strength." (*Id.*). The ALJ also found that there was "no supported, objective evidence contradicting [Dr. Schwab's] findings." (*Id.*). She therefore included in the RFC specific limitations that she found consistent with Dr. Schwab's opinion, "such as the need to change positions and an overall reduction of light exertional work duties." (*Id.*).

       Plaintiff's primary challenge is to the reliability of Dr. Schwab's consultative opinion. (Docket ## 9-1 at 11-14; 11 at 1-3). In maintaining that the opinion was stale and thus unreliable, plaintiff contends that his neck and back impairments were "exacerbated" by a motor vehicle accident that occurred on June 17, 2017, and worsened to the point that he required lumbar spine surgery in March 2018 and was recommended for cervical spine surgery in August 2018. (Docket # 9-1 at 13). The Commissioner responds that Dr. Schwab's opinion was not stale because the "problems that [p]laintiff complained about at the consultative examination were the same problems that he complained about following the [June 2017 motor vehicle

8

accident], namely, neck, leg, and back pain with some hand numbness." (Docket # 10-1 at 15). In the Commissioner's view, the "ALJ pointed to substantial evidence, including clinical findings and medical imaging, to support her determination that [p]laintiff's symptoms did not increase in severity following [the June 2017 motor vehicle accident], further supporting the finding that Dr. Schwab's opinion was not stale." (*Id.*).

Plaintiff is generally correct that "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and that "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted). *See also Pritchett v. Berryhill*, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence") (citation omitted). That said, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Pritchett v. Berryhill*, 2018 WL 3045096 at *8 ("[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates 'substantially similar limitations and findings'") (citations omitted); *Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that

opinion[;] [f]requently, new evidence about the claimant's condition will come to light during the intervening period of time[;] [t]he SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL 3723985 (E.D. Tenn. 2010).  Here, I disagree that Dr. Schwab's consultative medical opinion was rendered stale by subsequent developments in plaintiff's medical record, including his June 2017 motor vehicle accident and March 2018 lumbar spine surgery, and I find that the RFC is otherwise supported by substantial evidence.

Significantly, the record evidence before and after Dr. Schwab's October 2016 medical opinion "demonstrates substantially similar limitations and findings" relating to plaintiff's spinal impairments.  *Pritchett*, 2018 WL 3045096 at *8.  There is no dispute that plaintiff exhibited spinal impairments prior to Dr. Schwab's examination.  Two months prior to that examination, plaintiff underwent diagnostic imaging of his spine following his August 2016 motor vehicle accident, which revealed several "abnormalities," as the ALJ noted.  (Tr. 22-23).  On August 25, 2016, plaintiff presented for a cervical spine MRI reporting "[c]ervical pain as well as left upper and lower extremity radiculopathy" since his accident.  (Tr. 445).  The MRI revealed "developmentally short pedicles at all cervical levels," but "[n]o fracture or spondylolisthesis," "broad-based posterior disc herniation/extrusion" at the C7-T1 level, a "left lateral disc herniation/extrusion" that was "superimposed upon degenerative disc disease" and which "moderate[ly] to severely narrows the left neural foramen" at the C5-C6 level, and a "left posterolateral disc herniation/protrusion" that was "superimposed upon degenerative disc disease" and which "mildly effaces the thecal sac and moderate[ly] to severely narrows the left neural foramen" at the C6-C7 level.  (Tr. 445-46).  On that same date, plaintiff underwent a

thoracic spine MRI, noting "[c]ervical and dorsal pain" since his August 2016 accident. (Tr. 447). The MRI showed no compression fracture or spondylolisthesis, "small right paracentral posterior disc herniation/protrusion [that] mildly effaces the thecal sac and slightly contacts the thoracic spinal cord, which does not demonstrate abnormal signal change" at the T6-T7 level, and "small posterior disc bulges [that] mildly efface the thecal sac" at the T1-T2, T2-T3, and T5-T6 levels. (Tr. 447-48). Finally, on August 30, 2016, plaintiff underwent a lumbar spine MRI because of "[l]ow back pain and left lower extremity radiculopathy" since his accident. (Tr. 442). The MRI generally demonstrated "developmentally short pedicles at all lumbar levels," but "[n]o compression fracture, spondylolysis or spondylolisthesis." (*Id.*). It also revealed a "left posterolateral disc herniation/extrusion which compresses the left S1 nerve root and moderate[ly] to severely narrows the left neural foramen" that was "superimposed upon degenerative disc disease," as well as "bulging annulus [that] mildly effaces the thecal sac and right neural foramen" at the L5-S1 level, a "small central posterior disc herniation/protrusion [that] mildly effaces the thecal sac" at the L4-L5 level, and a "small posterior disc bulge [that] mildly effaces the thecal sac and neural foramina bilaterally" at the L3-L4 level. (Tr. 442-43).

    Only two months after these spinal images were taken, on October 28, 2016, Dr. Schwab examined plaintiff, and plaintiff reported corresponding pain throughout his spine, numbness, and exhibited some associated functional limitations at that time. (*See* Tr. 500-503). Plaintiff continued to report similar symptoms to medical providers in the months following Dr. Schwab's examination, none of which undermine Dr. Schwab's assessment of plaintiff. For instance, in November 2016 plaintiff reported to treating chiropractor Mark L. DelMonte, DC, pain throughout his spine, albeit slightly worse in severity, and associated numbness/tingling in his hands. (Tr. 719). In December 2016, plaintiff presented to another chiropractor with normal

appearance and posture and no limp or antalgic gait; although plaintiff exhibited limited range of motion in his cervical, thoracic, and lumbar spine, the chiropractor also noted "[s]uboptimal effort . . . on examination" and that plaintiff otherwise exhibited full strength in his upper and lower extremities, as well as full sensory responses in his upper extremities.  (Tr. 726-31).  In February 2017, DelMonte noted that plaintiff's most recent examination showed "greater range of motion, improvement of daily activities and less pain," despite the fact that plaintiff had not "reached pre-[August 2016] accident status or maximum medical improvement."  (Tr. 737).

        Contrary to plaintiff's view, records following his June 17, 2017 motor vehicle accident do not undermine Dr. Schwab's assessment because they do not demonstrate any significant deterioration in his functional abilities.  Medical records suggest that plaintiff did not go to the hospital or seek other medical treatment immediately after the accident, but rather continued attending his scheduled chiropractic appointments.  (Tr. 583, 783).  MRIs completed after plaintiff's June 2017 accident showed substantially similar findings to the results of the imaging completed following his August 2016 accident; indeed, the abnormal findings throughout plaintiff's spine were consistently noted to be "unchanged."  (Tr. 790-92; *see also* Tr. 754 (July 26, 2017 imaging of plaintiff's thoracic spine, which "*[c]orrelated with* prior exam performed [on August 25, 2016]") (emphasis supplied)); *see Wakefield v. Comm'r of Soc. Sec.*, 2020 WL 3100852, *5 (W.D.N.Y. 2020) (consultative opinion not stale where imaging and medical records post-dating opinion did not demonstrate deterioration; "consistent with the x-ray taken [on the day of the evaluation,] the subsequent image of [plaintiff's] spine continued to demonstrate [similar] degenerative changes, primarily at L5-S1, L3-L4, and L4-L5").  In addition, when plaintiff began treatment with neurosurgeon James Egnatchik, MD, on November 29, 2017, his complaints resembled those made to Dr. Schwab – "cervical pain, lumbar pain,

12

upper and lower extremity paresthesia and weakness." (Tr. 758). At that time, plaintiff reported that his pain had worsened since the June 2017 accident and that he had "progressive subjective weakness in his upper and lower extremities." (Tr. 759). Although Dr. Egnatchik's physical examination revealed decreased range of motion in plaintiff's neck and back and positive straight leg raises bilaterally,[5] Dr. Egnatchik also observed that plaintiff had "exaggerated guarded motions throughout examination" and continued to demonstrate (as he had during Dr. Schwab's examination) full strength in his upper and lower extremities and grip. (Tr. 760). Moreover, at a February 28, 2018 appointment with Dr. Egnatchik, plaintiff reported nearly the same pain severity in his cervical and lumbar spine as he had during Dr. Schwab's examination and, despite having limited range of motion in his neck and back, he continued to demonstrate full strength in his upper and lower extremities and had no focal motor deficits. (Tr. 819-20).

As the ALJ recognized, plaintiff underwent an "anterior lumbar fusion at L5-S1 with a posterolateral at L5-S1" on March 21, 2018. (Tr. 820, 825, 23). The fact that plaintiff elected to have surgery, however, does not render Dr. Schwab's opinion stale. *See Alexander v. Comm'r of Soc. Sec.*, 2020 WL 5642184, *3 (W.D.N.Y. 2020) ("[a] subsequent surgery, however, is insufficient, standing alone to render a medical opinion stale") (collecting cases). Importantly, plaintiff has not pointed to any evidence suggesting that his functional limitations deteriorated from the time of Dr. Schwab's examination, even assuming that the June 2017 motor vehicle accident precipitated his lumbar spine surgery.[6] Plaintiff reported to Dr.

---

[5] Even though plaintiff did not demonstrate positive straight leg raises bilaterally during Dr. Schwab's examination, he did so at times prior to the date of his consultative examination. (*See, e.g.*, Tr. 311, 313).

[6] After recommending plaintiff for lumbar spine surgery, Dr. Egnatchik noted that plaintiff "report[ed] that his symptoms had significantly worsened after" his June 2017 accident, and he also stated that "[s]ince [plaintiff's] symptoms were progressively worsened after the second motor vehicle accident[,] . . . he may have not needed surgical intervention if it was just in regard to the first motor vehicle accident." (Tr. 822). It is not clear whether Dr. Egnatchik's statement about plaintiff's need for surgery is based on plaintiff's own reports of worsening pain or Dr.

Egnatchik on May 1, 2018 that his surgery "significant[ly] improve[d]" his symptoms to the degree that "he only ha[d] numbness in his left leg maybe once every [two] weeks" and stated that he "ha[d] a tremendous improvement of the pain in his low back, [was] able to walk, [and] was] excited because he [was] able to care for his child now." (Tr. 860). In fact, Dr. Egnatchik "g[ave] [plaintiff] a letter from [his] office [on May 1, 2018] stating that [plaintiff] c[ould] care for his toddler *without any restrictions*," despite plaintiff's continued reports of neck pain and the possibility of neck surgery "if [plaintiff] . . . continu[ed] to have symptoms." (Tr. 861 (emphasis supplied)). Moreover, although plaintiff evidently continued to have back and neck pain and limited range of motion throughout his spine following surgery and discussed neck surgery with Dr. Egnatchik on August 7, 2018 (at which time plaintiff again "[e]xaggerated [his] movements on evaluation" (Tr. 949)), he also continued to demonstrate full strength in his upper and lower extremities, normal gait, and had no focal neurological deficits both before or after the surgery. (*See*, *e.g.*, Tr. 949 (August 7, 2018 treatment note), Tr. 899 (May 31, 2018 treatment note), Tr. 904 (March 14, 2018 treatment note), Tr. 908 (February 8, 2018 treatment note)). Thus, in the absence of any evidence showing greater functional limitations related to plaintiff's spinal pain than those opined by Dr. Schwab and reflected in the RFC, no basis exists on this record to conclude that Dr. Schwab's opinion was stale.

In short, I do not find that Dr. Schwab's opinion was rendered stale by plaintiff's June 17, 2017 motor vehicle accident or his subsequent lumbar spine surgery. Although plaintiff reported increased pain and reduced range of motion in his spine at times after Dr. Schwab's examination, he neither demonstrates additional associated functional limitations that undermine

---

Egnatchik's objective findings. In any event, Dr. Egnatchik's speculative suggestion that plaintiff "may have not needed" surgery but for the June 2017 accident hardly constitutes a definitive opinion that surgery *would.not* have been necessary.

Dr. Schwab's opinion, nor identifies any relevant evidence post-dating Dr. Schwab's opinion that the ALJ failed to consider. For these reasons, I find that substantial evidence supports the ALJ's RFC assessment. *See*, *e.g.*, *Sanchez v. Comm'r of Soc. Sec.*, 2020 WL 5107568, *9 (W.D.N.Y. 2020) (medical opinions were not rendered stale by subsequent accident where plaintiff "neither point[ed] to any medical evidence suggesting that after those opinions were rendered his condition deteriorated causing disabling functional limitations, nor identifie[d] any relevant evidence post-dating the medical opinions that the ALJ failed to consider"); *Abate v. Comm'r of Soc. Sec.*, 2020 WL 4597315, *6 (W.D.N.Y. 2020) ("[a]lthough the record included surgery for [p]laintiff's left knee and the additional cervical impairment, such events did not render [the consulting physician's] opinion impermissibly stale[;] [o]verall, [p]laintiff fails to show any additional limitations caused by these subsequent medical events[;] [f]urther, the ALJ considered [p]laintiff's knee impairments and cervical spine MRI in formulating her RFC determination"); *Johnson v. Comm'r of Soc. Sec.*, 2020 WL 5104550, *8 (W.D.N.Y. 2020) ("[h]ere, although the consultative report at issue was written prior to [p]laintiff's surgery and [motor vehicle accident], it was not stale because, contrary to what [p]laintiff maintains, there is substantial evidence (normal clinical findings) to support the ALJ's determination that [p]laintiff's condition did not worsen following the consultative exam[;] [m]oreover, the problems that [p]laintiff complained about at the consultative examination were the same problems that she complained about following the [motor vehicle accident], namely, neck and back pain"); *Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, *3-4 (W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history following [consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new ailment after [consultative examiner's] examination was the 'left ankle swelling'[;] . . . [b]ut the record does

15

not evidence any limitation from that swelling that the ALJ did not account for in the RFC[;] [s]o the ankle swelling is hardly a 'significant development'"); *Sexton v. Berryhill*, 2018 WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was completed "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . . [h]ere, however, the opinions of the state agency physicians are relevant to the period to which they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in [p]laintiff's condition that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly stated that additional evidence . . . was received and admitted into the record subsequent to the hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*, 2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of [consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

        In view of my finding that Dr. Schwab's opinion was not stale, plaintiff's argument that his RFC is unsupported by any medical opinion also fails. (Docket # 9-1 at 14-16). The ALJ's RFC finding accounts for the limitations assessed by Dr. Schwab, while also crediting the severity of certain of plaintiff's impairments in assessing additional limitations. (*See* Tr. 22-23). I find that the ALJ's RFC determination is supported by medical opinion

evidence and is not the product of the ALJ's own lay interpretation of the evidence. *See O'Sullivan v. Comm'r of Soc. Sec.*, 2020 WL 1180659, *7 (W.D.N.Y. 2020) ("although the ALJ did not find that the subsequent treatment evidenced any 'notable changes or worsening,' she nonetheless considered the subsequent information and [the plaintiff's] subjective allegations when formulating the RFC[;] . . . [t]he ALJ did not err . . . by including greater limitations in her RFC determination than those opined by [the consulting physician]").

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
        July 28, 2021